# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| JOHN MICHAEL CAPLES | } | CASE NO. 10-05230-JAC-7 |
| SSN: XXX-XX-0435 | } | |
| | } | CHAPTER 7 |
| Debtor(s). | } | |
| | | |
| DARREL NEVELS | } | A.P. No. 10-80114-JAC-7 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| JOHN MICHAEL CAPLES | } | |
| | } | |
| Defendant(s). | } | |

## MEMORANDUM OPINION

On June 20, 2011, this matter came before the Court for trial on the complaint to determine dischargeability of debt filed by Darrel Nevels against the debtor pursuant to 11 U.S.C. § 523(a)(2), (4) and (6).[1] For the reasons set forth below, the Court finds that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## FINDINGS OF FACT

1.      On September 1, 2010, the debtor filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code.   Plaintiff timely filed this complaint in which he alleges that the losses he sustained in an OptionsXpress investment account controlled by the debtor were

---

[1]      Plaintiff included additional grounds for relief in the original complaint which he did not pursue at trial.

the result of fraud, defalcation while acting in a fiduciary capacity, willful and malicious conversion, or embezzlement.

      2.      On May 24, 2010, plaintiff obtained a default judgment entered by the Circuit Court of Jefferson County, Alabama against the debtor in the amount of $153,000 based on the funds lost in the OptionsXpress account.  On Schedule F - Creditors Holding Unsecured Nonpriority Claims, the debtor listed the $153,000 judgment debt as an unsecured claim.

      3.      By post-trial stipulation submitted by the parties in this adversary, the parties agree that over a period of time the plaintiff paid the debtor no less than $70,686.14 and no more than $103,000 for investment into the OptionXpress account maintained by John Caples.  The parties further agree that the debtor made payments back to the plaintiff of no less $25,000 and no more than $32,500 with a total net difference between $38,186.14 and $78,000.  The Court finds that the evidence at trial supports the high end of this range for a loss of $78,000 resulting from debtor's investment methods involving the plaintiff's funds.


      4.      The debtor is a highschool graduate.  In the Spring of 2006, the debtor ventured into the practice of day trading after he completed an on-line investment program. The debtor is not a registered securities dealer or investment advisor in the State of Alabama.[2] After the debtor completed the on-line investment program, he opened an OptionsXpress account in which he began day trading on behalf of himself and his mother-in-law, Rita Powell, with

---

[2]     See ALA. CODE § 8-6-3 requiring every person engaged in the business of effecting transactions in securities in Alabama be registered with the Alabama Securities Commission.

an initial investment of $18,000 provided by Powell. OptionsXpress is an on-line brokerage account. The debtor explained that he would research different companies to determine which companies were profitable based on what he learned from an on-line site called Investtools.

5.      Powell owns several health food stores in Jefferson County, Alabama.  The debtor openly carried out his day trading business at the front counter of one of the health food stores while he made trades in the OptionsXpress account on behalf of himself, Powell, and several other store employees.

6.      The plaintiff has a degree in the field of Naturopathy.  He obtained his degree from Trinity School of Natural Health and began his practice by renting space from Powell at one of the health food stores.  The plaintiff's practice focuses on a client's whole physical and emotional well being using natural herbs and exercise.  After the plaintiff obtained his degree in Naturopathy, he initially hired an out-of-state licensed brokerage firm named Rydex to handle his investments.  Plaintiff soon became dissatisfied with Rydex because the brokerage firm lost $3,000 in his account and was unable to satisfy certain accounting/tax questions he wanted clarified.  The plaintiff explained that he was very concerned about the loss because he was investing for himself, his son and his mother's future.  Plaintiff expressed his dissatisfaction with the brokerage firm to Powell who is also an accountant. Powell encouraged the plaintiff to seek the debtor's investment advice.  Plaintiff alleges that Powell told him that the debtor was a really good broker and that he had several clients at the store.  It is apparent from the plaintiff's testimony that he placed complete trust in Powell,

3

and still highly regards her, as he refers to her as "Elder Mother." Plaintiff referred to both the debtor and Powell as family.

7. At some point in 2006, Powell introduced the plaintiff to the debtor and suggested that the debtor help the plaintiff with his investment needs. After they were introduced, the plaintiff and debtor discussed the debtor's day trading business. The debtor explained that he had just finished school but had gained experience by investing for Powell's health food stores. The plaintiff alleges that the debtor told him that he had a "certificate" to trade stocks, that he was a better broker than Rydex, and that he was an on-line trader. The debtor denies acting as a financial planner or advisor for plaintiff, but admits that he took the plaintiff's money and agreed to invest same for the plaintiff. The debtor admits that he used his OptionsXpress account to make trades for the plaintiff, himself, Powell, and other health food store employees.

8. On July 7, 2007, the debtor and plaintiff both signed a handwritten agreement stating that the debtor agreed to invest $20,000 for the plaintiff for an initial period of six months. Over the next two years, the debtor acted as the plaintiff's investment advisor and broker. During this time period, the plaintiff would occasionally ask the debtor to stop making trades when the market was down, but the plaintiff otherwise relied upon and allowed the debtor to make all other investment decisions and trades.

9. The plaintiff testified that he understood the debtor would either create a separate account for the plaintiff's investments or that the debtor would put his dividends into

4

a separate account on behalf of the debtor. Instead, the debtor took the funds and co-mingled the funds into the OptionsXpress account that was owned jointly by himself and Powell.

10.      The debtor did not charge the plaintiff for his investment services, but enjoyed the use of and complete control over the debtor's funds as capital in his personal day trading account.  The debtor testified that his goal was to provide for "everyone's" retirement.

11.      On October 28, 2009, the plaintiff told the debtor to stop trading and asked for a return of his money.  Plaintiff alleges that there was $95,654 in the account in October of 2009, but the debtor asserts that there was actually only $9,500 in the account.  By February or March of 2010, the debtor admits that he had lost all but $24 in the account.  The plaintiff testified that he asked for his money to be returned on several occasions during this time period, but he never pressed the matter in part because he thought of the debtor as family. The debtor admitted that the plaintiff told him that he wanted to get out of the market in the fall of 2009, but the debtor asserts that the money was tied up and could not be immediately liquidated.

12.      The debtor testified that he invested and lost $7,500 of his own money, $28,000 of Powell's money, plus all of the plaintiff's money.  The debtor asserts that he lost the money as a result of general market conditions.

## CONCLUSIONS OF LAW

Based upon the forgoing, the plaintiff seeks a determination that the debt arising from the debtor's day trading losses is excepted from discharge pursuant to § 523(a)(4) on the

5

ground that the debtor committed an act of defalcation while acting in a fiduciary capacity.

The debtor argues that there is no evidence of a fiduciary relationship to support a claim

under § 523(a)(4).   The Court disagrees.

Section 523(a)(4) of the Bankruptcy Code excludes from discharge any debt "for

fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."   11

U.S.C. § 523(a)(4).   To sustain a cause of action under this section for defalcation, the

plaintiff must establish two elements: (1) that the debtor was acting in a fiduciary capacity;

and (2) committed an act of defalcation while acting in such capacity.[3]  The plaintiff must

prove each element by a preponderance of the evidence.[4]

Although the Bankruptcy Code does not define the term "fiduciary capacity" for

purposes of § 523(a)(4), federal case law narrowly construes same.[5]  Federal law provides

that the traditional definition of fiduciary is not applicable in bankruptcy.  "The traditional

meaning of fiduciary under state law– loyalty, good faith and fair dealing – is too broad for

purposes of this section."[6]  Instead, federal courts have "articulated a requirement that the

trust relationship have existed prior to the act which created the debt in order to fall within

the statutory [fiduciary capacity] exception."[7]  "Involuntary trusts such as constructive or

---

[3]      *McDowell v. Stein,* 415 B.R. 584, 594 (Bankr. S.D. Fla. 2009).

[4]      *Grogan v. Garner,* 498 U.S. 279 (1991).

[5]      *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006).

[6]      *In re Hosey*, 355 B.R. 311, 321 (Bankr. N.D. Ala. 2006).

[7]      *In re Fernandez-Rocha*, 451 F.3d 813, 816 (11th Cir. 2006).

6

resulting trusts do not satisfy § 523(a)(4) because the act which created the debt simultaneously created the trust relationship."[8]  "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio.* He must have been a trustee before the wrong and without reference thereto."[9]  Thus,  § 523(a)(4) only applies to  "a person who was already a fiduciary when the debt was created."[10] Fiduciary trusts relationships that are implied in law as a remedy for some dereliction of duty are not excepted from discharge.[11]

Rather, federal case law limits the § 523(a)(4) exception to situations involving express or technical trusts.[12] Express trusts are voluntary trusts created by contract.[13]  An express trust must generally be in writing and must express the parties intent to create a trust, specifically define the trust property, and name both a beneficiary and a trustee.[14]  Technical

---

[8]        *Ex rel Conner,* 2010 WL 1709168 *3 (Bankr. M.D. Ga. 2010).

[9]        *In re Fernandez-Rocha*, 451 F.3d 813, 816 (11th Cir. 2006)(quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)) .

[10]       *Id.*

[11]       *In re Fernandez-Rocha*, 451 F.3d 813, 816 (11th Cir. 2006); *Moore v. Murphy (In re Murphy)*, 297 B.R. 332, 348 (Bankr. D. Mass. 2003).

[12]       *Quaif v. Johnson,* 4 F.3d 950, 953 - 954 (11th Cir. 1993); *McDowell v. Stein,* 415 B.R. 584, 594 (Bankr. S.D. Fla. 2009); *In re Hosey*, 355 B.R. 311, 321 (Bankr. N.D. Ala. 2006).

[13]       *In re Fernandez-Rocha*, 451 F.3d 813, 816 (11th Cir. 2006)(express trust); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333 (11th Cir. 2000).

[14]       *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1341 (11th Cir. 2000); *In re Darby*, 226 B.R. 126, 129 (Bankr. M.D. Ala. 1998); *Coosa River Water, Sewer and Fire*, 611 So.2d 1058, 1062-1063 (Ala. 1993)(settlor of an express trust must give up control of the res or trust property under Alabama law).

7

trusts include relationships in which trust-type obligations are imposed pursuant to statute

or common law.[15] For there to be a technical trust, property must be entrusted to the debtor.[16]

While federal law narrowly defines "fiduciary capacity" for purposes of § 523(a)(4)

to include only relationships involving express or technical trusts, whether the relationship

between the debtor and plaintiff may properly be characterized as an express or technical is

determined by reference to state law.[17] The Alabama Supreme Court has defined a fiduciary

or confidential relationship as one in which:

> [O]ne person occupies toward another such a position of adviser or counselor
> as reasonably to inspire confidence that he will act in good faith for the other's
> interests, or when one person has gained the confidence of another and
> purports to act or advise with the other's interest in mind; where trust and
> confidence are reposed by one person in another who, as a result, gains an
> influence or superiority over the other; and it appears when the circumstances
> make it certain the parties do not deal on equal terms, but, on the one side,
> there is an overmastering influence, or, on the other, weakness, dependence,

---

[15]     *Quaif v. Johnson,* 4 F.3d 950, 953 - 954 (11th Cir. 1993)(statutory trust imposed on insurance agent under Georgia law); *In re Fernandez-Rocha,* 451 F.3d 813 (11th Cir. 2006)(failure to maintain funds under Florida's Financial Responsibility Act did not result in breach of fiduciary duty); *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779 (5th Cir. 1993)(trust obligations under § 523(a)(4) can arise pursuant to statute, common law, or formal trust agreements); *Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir. 1990)(corporate officer owed common law fiduciary duty to corporation and stockholders for purposes of § 523(a)(4)); *Lewis v. Short (In re Short)*,818 F.2d 693, 695-96 (9th Cir. 1987)(common law imposed trustee-like duties on partners); *Lanier v. Futch (In re Futch)*, 2011 WL 576071 *23 (Bankr. S.D. Miss. 2011)(finding commodities broker owed a fiduciary duty to customer under Mississippi law); *In re Murphy*, 297 B.R. 332, 348 (Bankr. D. Mass. 2003)("A technical trust is one that is imposed by either statutory or common law.").

[16]     *Tarpon Point, LLC v. Wheelus (In re Wheelus),* 2008 WL 372470 (Bankr. M.D. Ga. 2008).

[17]     *McDowell v. Stein,* 415 B.R. 584, 594 (Bankr. S.D. Fla. 2009);  *Ex rel Conner*, 2010 WL 1709168 *3 (Bankr. M.D. Ga. 2010); *In re Hosey,* 355 B.R. 311, 321 (Bankr. N.D. Ala. 2006);*In re Murphy,* 297 B.R. 332, 349 (Bankr. D. Mass. 2003); *In re Capps,* 193 B.R. 955, 960 (Bankr. N.D. Ala. 1995).

or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.[18]

Under this definition, it is clear the debtor stood in a fiduciary relationship to plaintiff under Alabama law. The debtor stood in a position of an advisor and inspired confidence in the plaintiff that he would act in good faith in the plaintiff's investment interests. The debtor gained the plaintiff's confidence and purported to act with his interest in mind. The plaintiff had no experience in securities trading. The plaintiff considered the debtor and the debtor's mother-in-law to be family and became dependent upon the debtor to guide his investment decisions. Although the debtor knew that the plaintiff was risk adverse, yet he agreed to invest the plaintiff's funds in the risky venture of day trading. The plaintiff relied upon the debtor's perceived stock market knowledge and entrusted the debtor with almost complete control over his savings.

While this Court has been unable to find any Alabama cases directly on point holding a broker or investment advisor liable for breach of fiduciary duty, the Court did find a district court opinion in Alabama, *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107 (N.D. Ala. 1971), in which the district court recognized that "[w]here the broker-dealer is also an investment advisor" the broker "does occupy a fiduciary relationship" with the customer.[19] In *Robinson,* the broker did not have a duty to disclose

---

[18] *Univ. Fed. Credit Union v. Grayson*, 878 So.2d 280, 291 (Ala. 2003).

[19] *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107, 113 (N.D. Ala. 1971).

9

certain information to a customer where the broker merely executed buy and sell orders as directed by the investor. The district court recognized the distinction between a broker who performs the mechanical, ministerial requirements of purchasing or selling securities as compared to a broker or investment advisor who acts as the manager of a discretionary account. The court explained that the agency relationship between a customer and broker generally terminates with the execution of the order placed by the customer because the broker's duties are only to fulfill the mechanical, ministerial requirements of the purchase or sale as directed by the customer. The court recognized, however, that a fiduciary relationship does exists when the broker is also acting as an investment advisor and maintains control over the investment decisions as the debtor in this case did.

Several bankruptcy courts have found a fiduciary relationship between a broker or financial advisor to be fiduciary in nature for purposes of § 523(a)(4) when the broker has the authority to make investment decisions on behalf of the investor in what is referred to as a discretionary account.[20] Bankruptcy courts have recognized that the duty owed to a customer by a broker "depends in large part upon whether the trading account of the

---

[20]    *Lanier v. Futch (In re Futch)*, 2011 WL 576071 (Bankr. S.D. Miss.2011)(under Mississippi law a commodities broker owes a fiduciary duty to his customer); *Nugent v. Villalba (In re Villalba),* 2007 WL 465421 (Bankr. N.D. Tex. 2007)(day trading losses were excepted from discharge under § 523(a)(4)); *McCoun v. Rea (In re Rea),* 245 B.R. 77 (Bankr. N.D. Tex. 2000)(day trader owed fiduciary duty to clients); *Dimichele v. Nassbridges (In re Nassbridges)*, 434 B.R. 573 (Bankr. C.D. Cal. 2010)(debtor holding himself out as experienced gold trader stood in fiduciary capacity to investors); *Prudential v. Pitman,* 1991 WL 160039 (N.D. Ga. 1991)(a broker becomes a full-fledged fiduciary of the customer with a discretionary account).

customer is discretionary or non-discretionary."[21]  A Georgia district court explained the

distinction between discretionary and non-discretionary accounts, stating:

> In a non-discretionary account, the broker acts only upon the customer's instructions and the customer determines all purchases and sales.  In a discretionary account, the broker has the authority to make trades on the broker's own initiative for the best interests of the customer.  It is only with a discretionary account that the broker becomes a full-fledged fiduciary of the customer.[22]

The bankruptcy case most on point with the facts of the case before this Court is that

of *McCoun v. Rea*, 245 B.R. 77 (Bankr. N.D. Tex. 2000), in which the bankruptcy court held

that a technical trust arose from the parties' broker-client relationship and excepted from

discharge the debt arising from the debtor's day trading losses. The debtor, a licensed

securities broker, asked the plaintiffs to invest $100,000 in day trading.  The debtor

represented that he had experience in day trading, had several accounts, would personally

trade the plaintiffs' account, and provide them with daily account reports.  Instead, the debtor

allowed his son, who did not hold a license to trade securities, to manage the plaintiffs'

account, and failed to supervise his son's trades.  The son immediately began losing money

and falsified the daily reports given to the plaintiffs to hide the losses.

The bankruptcy court found that the debtor and plaintiffs operated like a joint venture

with the plaintiffs providing the capital for the investments while they vested full discretion

in the debtor regarding the daily investment decisions.  The plaintiffs had virtually no

---

[21]    *Prudential v. Pitman,* 1991 WL 160039 (N.D. Ga. 1991)(the broker becomes a full-fledged fiduciary of the customer with a discretionary account).

[22]    *Id.*

Case 10-80114-JAC    Doc 39    Filed 07/07/11    Entered 07/07/11 13:42:47    Desc Main
Document        Page 11 of 19

experience in securities trading and relied on the debtor.  Applying Texas common law, the

bankruptcy court found that the parties had a relationship of trust and confidence and stood

in a principal and agent relationship or as parties in a venture over which Texas law would

impose a technical trust relationship.

The debtor argued that he should not be viewed as a broker because he had not been

paid a commission, but the court found that the debtor's activities fell squarely within the

securities law definition of a broker which defines a broker as an individual who is "engaged

in the business of effecting transactions in securities for the account of others."[23]  The debtor

was engaged in the practice of day trading stocks.  The court explained that "day trading

requires aggressive and frequent securities trading, and as a result, generally requires a

significant amount of capital, a sophisticated understanding of securities markets and trading

techniques, and a high risk tolerance."[24]  The debtor effected securities transactions for the

plaintiffs with total discretion.  Accordingly, the court determined that he owed a fiduciary

duty to the plaintiffs as a broker controlling a discretionary account.[25]

When a broker or investment advisor merely performs ministerial services for an

investor, basically executing buy and sell orders as instructed by the investor, courts have

found that the non-discretionary account relationship does not create a fiduciary

---

[23]     *McCoun v. Rea (In re Rea)*, 245 B.R. 77, 88 (Bankr. N.D. Tex. 2000)(quoting the
Securities Exchange Act, 15 U.S.C. § 78c(a)(4)).

[24]     *Id.* at 82.

[25]     *Id.* at 88.

12

relationship.[26]  "[T]he agency relationship created by a non-discretionary account arises when the client places an order and terminates when the transaction ordered is complete."[27] In *SFM Holdings, LTD. v. Banc of America Securities, LLC*, 600 F.3d 1334 (11th Cir. 2010), the Eleventh Circuit held that a Florida broker did not owe a fiduciary duty to advise an investor about the purchase or sale of securities where a third party acted as the client's investment advisor and maintained discretionary control over the brokerage account.  The brokerage agreement specifically provided that the broker was not acting as an advisor or fiduciary to the investor and the broker had no direct contact with the investor.  The broker merely executed the investor's transactions which were directed by the financial advisor. The court of appeals explained that the fiduciary in this relationship was the financial advisor, not the broker, because it was the financial advisor who had direct contact with the client and made the investment decisions.

The Eleventh Circuit has held a broker liable under state common law for breach of fiduciary obligations in a Florida case involving a broker's one-time "non-discretionary" recommendation to an investor to pursue to options trading, a highly speculative investment, and to consult with an investment advisor without investigating the investment advisor's

---

[26]      *SFM Holdings, LTD. v. Banc of America Securities, LLC,* 600 F.3d 1334, 1338-39 (11th Cir. 2010).

[27]      *Baker v. Wheat First Securities*, 643 F.Supp. 1420, 1428 (S.D.W.Va. 1986).

13

qualifications, experience or education.[28]   The Eleventh Circuit held that "[t]he law is clear

that a broker owes a fiduciary duty of care and loyalty to a securities investor."[29]

In the case before the Court, the debtor was acting as both broker and financial advisor

to the plaintiff controlling a discretionary account.   The debtor made essentially all

investment decisions regarding the account.   Although the debtor would occasionally halt

trading at the plaintiff's direction, there is no suggestion that the plaintiff made any of the

decisions or had any control over the daily trades the debtor executed.   Plaintiff completely

relied upon and allowed the debtor to make these investment decisions.   Thus, the debtor

exercised discretionary control over the plaintiff's investment account creating a fiduciary,

trust-type obligation over the funds with which the plaintiff entrusted the debtor. The

debtor's investment methods involving the plaintiff's funds resulted in the plaintiff losing

$78,000.  The debtor effected sales and purchases of securities on the plaintiff's behalf in a

day trading account with little or no input from the plaintiff. As the plaintiff transferred his

savings to the debtor, creating a trust *res*, and the debtor was a fiduciary with trust like duties,

a technical trust under the law existed.   The transactions effected by the debtor on the

plaintiff's behalf occurred after the establishment of the technical trust.   Based upon the

forgoing, the Court is persuaded that the debtor acted as the plaintiff's broker and investment

---

[28]     *Gochnauer v. A.G. Edwards & sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987); *See also Rushing v. Wells Fargo Bank, N.A.,* 752 F.Supp.2d 1254 (M.D. Fla. 2010)(finding investor stated a claim for common law breach of fiduciary duty under state common law).

[29]     *Gochnauer v. A.G. Edwards & sons, Inc.*, 810 F.2d 1042 (11th Cir. 1987).

14

advisor over a discretionary account sufficient to establish a fiduciary relationship for purposes of §523(a)(4).

The second element of §523(a)(4) requires evidence of defalcation. While the term defalcation generally refers to a failure to produce funds entrusted to a fiduciary, the Eleventh Circuit has observed that the "best analysis of 'defalcation' is that of Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937), in which 'Judge Hand concluded that **while a purely innocent mistake by the fiduciary may be dischargeable, a 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' embezzlement,' or even 'misappropriation.'"[30]** Indeed, the court of appeals observed that that "[s]ome cases have read the term even more broadly, stating that **even a purely innocent party** can be deemed to have committed a defalcation for purposes of § 523(a)(4)."[31] The term defalcation has been further defined by courts in the Eleventh Circuit to include a "**fiduciary's failure to account for funds due to any breach of duty whether it was intentional, willful, reckless, or negligent. Proof of fraud is not even needed**."[32]

---

[30]    *In re Fernandez-Rocha,* 451 F.3d at 817 (quoting *In re Quaif*, 4 F.3d at 955 (citing *Central Hanover*, 93 F.2d at 512)).

[31]    *Id.* (emphasis added).

[32]    *Fish v. Sadler (In re Sadler)*, 2007 WL 4199598, at *2 (Bankr. N.D. Fla. 2007)(emphasis added).

Case 10-80114-JAC   Doc 39   Filed 07/07/11   Entered 07/07/11 13:42:47   Desc Main
Document       Page 15 of 19

Brokers owe broad fiduciary duties with respect to discretionary accounts.[33]  In *McCoun v. Rea*, 245 B.R. 77 (Bankr. N.D. Tex. 2000), the court explained that a broker's fiduciary obligations generally include the duty to recommend securities suitable for the customer; to provide the customer with all information relevant to the investor's affairs; the duty of making recommendations in the best interest of the customer; to segregate the customer's funds; to provide an accounting; to manage the account in a manner directly comporting with the needs and objectives of the customer; to keep informed regarding changes in the market; to keep his customer informed as to each completed transaction; and to explain the practical impact and potential risks of the course of dealing in which the broker is engaged.

As a fiduciary under a technical trust, the debtor should have clearly explained to the plaintiff the risks associated with day trading.  Given that the plaintiff had no experiences in securities trading and was clearly risk adverse, the debtor's decision to invest the plaintiff's savings in day trading cannot be justified.  Had the risks associated with day trading been fully explained to the plaintiff, the plaintiff would not have entrusted the debtor with his savings.  Instead, the debtor led the plaintiff to believe that he was a certified or licensed broker when he was not and indicated that he was a better "broker" than the plaintiff's licensed broker. Based upon these representations, the plaintiff entrusted the debtor with essentially complete control over funds totaling $103,000 over a two year period.

---

[33]     *Moore v. Murphy (In re Murphy)*, 297 B.R. 332 (Bankr. D. Mass. 2003).

The debtor used the plaintiff's funds to further his highly risky day trading venture. There is no evidence that the debtor adequately and forthrightly explained the extreme risk involved in day trading. Over a period of two years, the debtor proceeded to lose the plaintiff's total investment day trading even though he knew the plaintiff was risk adverse. It is further evident that the debtor failed to keep the plaintiff adequately informed regarding the losses incurred as the plaintiff believed his account had a balance of $95,000 at a point when the debtor testified that the account only had a balance of $9,500.00. Further, the debtor admits that he did not segregate the funds with which the plaintiff entrusted to him.

Under § 523(a)(4), a defalcation is willful or reckless neglect of a fiduciary duty, even if not accompanied by fraud or embezzlement.[34] Clearly, the debtor acted willfully or recklessly with the funds entrusted to him by the plaintiff by engaging in excessive and abusive trading practices that were disproportionate to the character and objective of the plaintiff's investment needs. Based upon the forgoing, the Court finds that the plaintiff has established by a preponderance of the evidence that the debtor committed an act of defalcation while acting in a fiduciary capacity for purposes of § 523(a)(4). The debt of $78,000 is nondischargeable.

The Court does not, however, find that the debtor committed an act of fraud for purposes of § 523(a)(2)(A) or willful and malicious conversion for purposes of § 523(a)(6). Section 523(a)(2)(A) excludes from discharge debts obtained through "false pretenses, a false

---

[34]    *Nugent v. Villalba (In re Villalba)*, 2007 WL 465421 (Bankr. N.D. Tex. 2007); *Jones v. Francisco (In re Francisco),* 204 B.R. 247 (Bankr. M.D. Fla. 1996)(defalcation includes innocent defaults in duty).

17

representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The Eleventh Circuit has held

that the elements of a claim under § 523(a)(2)(A) are: (1) the debtor made a false

representation with the intention of deceiving a creditor; (2) the creditor relied on the false

representation; (3) the reliance was justified; and (4) the creditor sustained a loss as a result

of the false representation.[35] The Bankruptcy Code also excludes from discharge a "willful

and malicious injury by the debtor to the property of another entity." 11 U.S.C. § 523(a)(6).

"[A] debtor is responsible for a 'wilful' injury when he or she commits an intentional act the

purpose of which is to cause injury or which is substantially certain to cause injury."[36]

"Malice can be implied when a debtor commits an act that is "wrongful and without just

cause or excessive even in the absence of personal hatred, spite or ill-will." [37] While the

Court believes that the debtor committed an act of defalcation for purposes of § 523(a)(4),

the Court finds that the evidence submitted at trial is insufficient to support of finding that

the debtor made a false representation with the intent to deceive the plaintiff, nor that the

debtor willfully and maliciously converted the plaintiff's funds. The debtor testified that he

operated the day trading account with the desire to provide for everyone's retirement. The

debtor did not charge a commission for making any of the trades. After observing the debtor

during the trial, the Court believes that the debtor was simply in over his head and that he

---

[35]     *In re Wood,* 245 Fed. Appx. 916 (11th Cir. 2007); *In re Villa,* 261 F.3d 1148, 1150 (11th Cir. 2001).

[36]     *In re Thomas*, 288 Fed. Appx. 547, 549 (11th Cir. 2008).

[37]     *Id.*

recklessly and negligently engaged in a risky business believing perhaps too much in his own abilities, but the Court does not find that the debtor acted with fraud or willfully with malice.

A separate order will be entered consistent with this opinion.

Done and Ordered this day July 7, 2011

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

19